## THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. J. G. HUTCHISON.

### No. 409.*

1. RAILROADS— *Fire Damage—Evidence.* " In an action against a railroad company to recover damages for the destruction of an elevator by fire alleged to have been negligently caused by the company in the operation of its railroad, it is not indispensable to prove by direct evidence that the fire escaped from an engine on the defendant's road; but if the circumstances shown are adequate to convince reasonable men that the fire was so caused, the jury may properly base a verdict thereon." ( *Railroad Co. v. Matthews*, 58 Kan. 447, 49 Pac. 602.)

2. ——— *Evidence Examined.*   The evidence set forth, and held insufficient to uphold the verdict.

Error from Lyon district court; W. A. RANDOLPH, judge.   Opinion filed February 17, 1899.   Reversed.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*J. G. Hutchison,* for defendant in error.

The opinion of the court was delivered by

SCHOONOVER, J.: This action was commenced by defendant in error against the plaintiff in error to recover for damages to an orchard caused by fire escaping from a locomotive of the railroad company.   The case was tried before a justice of the peace and judgment rendered by default against the railroad company for $300.   The case was afterward appealed to the district court of Lyon county, where the case was tried before the court and a jury, upon the bill of particulars filed before the justice of the peace.   The plaintiff below obtained a verdict and judgment for

*Petition for order to certify denied by supreme court April 8, 1899.—REP.

$250, and the defendant railroad company brings the case here for review.

The serious error complained of is the refusal of the trial court to instruct the jury that, under the evidence, they should return a verdict in favor of the defendant below.    The action was commenced under section 32, chapter 70, General Statutes of 1897 (Gen. Stat. 1889, ¶ 1321), which is as follows :

" In all actions against any railway company organized or doing business in this state, for damage by fire caused by the operating of said railroad, it shall be only necessary for the plaintiff in said action to establish the fact that said fire complained of was caused by the operating of said railroad, and the amount of his damages (which proof shall be *prima facie* evidence of negligence on the part of said railroad) ; provided, that in estimating the damages under this act the contributory negligence of the plaintiff shall be taken into consideration."

The specific charge of negligence, as alleged in the bill of particulars, is as follows :

" That on said day the said defendant, while running one of its trains on said road in said county, managed its said train carelessly and negligently and failed to employ suitable means to prevent the escape of fire from the engine that was running said train, and also permitted dead and dry grass and other combustible material to remain on the right of way of the defendant near the track of its road, so that by reason of its carelessness and negligence as aforesaid fire escaped from the engine of the company and set fire to the dry grass and other material on the right of way, and by reason of a continuous body of dry grass and other material, and without any fault of this plaintiff, it was communicated to the premises of the plaintiff, and then and there injured, burned and destroyed certain fruit-trees belonging to said plaintiff then and there growing upon said premises."

In support of the allegations of negligence as alleged in the bill of particulars, J. G. Hutchison testified :

" Ques.  Now, when did this fire occur of which complaint is made in this bill of particulars?  Ans.  On the 26th of March, 1890 ; as near as I can come at it.

" Q.  Were you present and did you see the fire yourself?  A.  I did not.

" Q.  Tell the jury what you know yourself about the fire, and how you discovered it, and all you know about it.  A.  Mr. L. A. Keys came to my office and left word that there had a fire run over the orchard and destroyed the apple trees, or some of them, and I went out, and the fire had just burned freshly over the ground.  It was in the morning that this message came, and I went out and looked over the ground, and in looking over the ground I found that fire had burned from, starting here ( indicating ), and burned over about that portion of the orchard ( indicating on the diagram).  It had come clear down to this line — this is the South avenue road — and burned into a hedge.  There is a hedge fence along the road ; burned into the hedge and burned the leaves out.  There are no trees on this portion of it ( indicating ), and no damage was done.

" Q.  Could you see where the fire came from?  A. Yes ; in order to ascertain where the fire came from I followed it back up, and the fire came in from this piece of ground up here (indicating), and it came into my premises right here at the corner (indicating).  It had burned over a good portion of this piece of ground (indicating), in about that shape (indicating), and I followed it back, and right here, about two or three rods from this corner of the Gates piece of land and about thirty-seven or thirty-eight feet, I should judge, from the railroad-track, is where the fire seemed to have originated.  There was some dried grass and stuff accumulated on the ground there and there was a cinder lying there on the ground.  Of course it was dead at that time, but the fire appeared to have originated with that and spread right out.

" Q.  Was the place where you found the cinder,

and the origin of the fire, on the right of way of the railroad company, or not? Was it, or was it not? A. It was on the right of way of the railroad company.

"Q. Did you see any dry grass or anything? A. The dried grass extended back a little distance north of where the cinder was lying. It was all burned off, of course, south of that.

"Q. On each side of where the fire started was there any dry grass? A. There was; yes."

*Cross-examination.*

"Q. How soon after the fire were you there? A. The next day.

"Q. Still smoking there, was it? A. No; no fire there at the time.

"Q. You know it was the next day because of information you received when it occurred? A. Yes, sir.

"Q. How close to the track did you follow up the line of burning grass? A. About thirty-seven feet, I think, of the track, from the measurement that I have made since.

"Q. What was there between where you say the fire started and the railroad-track, that thirty feet, in the way of vegetation? A. There was a little hedge fence, which has since been taken away.

"Q. Was the origin of the fire, as you call it, inside the hedge fence? A. It was. What do you mean by inside?

"Q. On the opposite side of the hedge fence from the railroad-track. A. It was; yes.

"Q. How near to the hedge fence? A. I judge within about two feet of the hedge fence.

"Q. What was the nature of the vegetation immediately around this cinder that you saw there? A. There was dead grass and weeds.

"Q. What was the size of the cinder? A. Oh, I should say about as big as that (indicating).

"Q. As big as a hen egg? A. No, sir.

"Q. As big as a walnut with the hull off? A. No, not as big as that.

"Q. As big as a hickory-nut? A. About as large as that, I should say; a small hickory-nut.

"Q. Was the burnt district continuous from that burnt cinder down to where it stopped? A. Yes; rather from my premises back up.

"Q. What was the size of it right near to that cinder? A. The size of the burnt place?

"Q. Yes. A. Well, it seemed to spread out either way right from that cinder.

"Q. How was it between the cinder and the hedge? A. It was n't burnt over between the cinder and the hedge.

"Q. What was the size of the vegetation and the character of it? A. It was dead grass and weeds. This was along in the latter part of March and of course it was dead. It had fallen down on the ground.

"Q. Had there been a back-fire burned through the hedge? A. There had not.

"Q. Had there been a back-fire at all? A. There had not been any back-fire at all, seemingly.

"Q. What was the character of the hedge fence, high or low? A. It was a little, scrubby hedge fence, three or four feet high.

"Q. Did you pick up that cinder? A. I did not.

"Q. Well, are you right sure, now, that it was a cinder? A. Well, yes, I am sure it was a coal cinder."

This was all the testimony as to the cause of the origin of the fire.

It is contended that the plaintiff below, having elected in drawing his bill of particulars to point out the specific act of negligence claimed and relied on, should be required to establish it. This is undoubtedly the better practice.

In the case of *S. K. Rly. Co. v. Griffith*, 54 Kan. 428, 38 Pac. 478, the supreme court said:

"In an action against a railway company by one of its employees to recover damages for injuries occasioned by the negligence of the defendant or its servants, the negligence proven at the trial and found by the jury as a basis for a general verdict in favor of

39—8 KAN. APP.

the plaintiff must correspond with the averments of the petition.'' See also *Railroad Co. v. Owens*, 6 Kan. App. 515, 50 Pac. 962.

Under this particular section of the statute, it is only necessary to allege and prove that the fire was caused by the operation of the railway to make out a *prima facie* case. The specific act of negligence, as alleged in the bill of particulars in this case, was that the fire was caused by the operation of the railway. Does the evidence as set forth in this opinion prove, or tend to prove, that this fire was caused by the operation of the railway? Is it sufficient to cast upon the railway company the burden of showing that it was not the result of its negligence?

In the case of *Railroad Co. v. Matthews*, 58 Kan. 447, 49 Pac. 602, the supreme court said :

'' In an action against a railroad company to recover damages for the destruction of an elevator by fire alleged to have been negligently caused by the company in the operation of its railroad, it is not indispensable to prove by direct evidence that the fire escaped from an engine on the defendant's road ; but if the circumstances shown are adequate to convince reasonable men that the fire was so caused, the jury may properly base a verdict thereon.''

Giving to the evidence in this case the most liberal construction, the circumstances shown are not adequate to prove that the fire was caused by the operation of the road. The judgment of the district court' is reversed.